MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: ROBERT WILLIAM YALEN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2722
Facsimile: (212) 637-2687
robert.yalen@usdoj.gov

**'08 CIV 7936**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

UNITED STATES OF AMERICA,

                 Plaintiff,

         v.

ESTATE OF MARTIN J. MACHAT;
HARVEY CORN; AVRIL GIACOBBI;
ERIC R. SKLAR; ROSLYN MACHAT;
CHERYL MACHAT DORSKIND;
HELENE MACHAT MICHAEL;
MICHAEL MACHAT; STEVEN MACHAT;
ALFRED FABRICANT; and
KAYSER & REDFERN, LLP,

                 Defendants.
------------------------------------------------------------- x

COMPLAINT

ECF Case

08 Civ. _____ ( _____ )

Plaintiff, United States of America (the "United States" or the "Government"), by its

attorney Michael J. Garcia, United States Attorney for the Southern District of New York, herein

alleges upon information and belief for its complaint as follows:

## INTRODUCTION

1.    This is a civil action to reduce to judgment unpaid federal tax liabilities of

defendant Estate of Martin J. Machat (the "Estate") and to recover funds owed to the United

States on account of those tax liabilities.

2.      The first two claims for relief are brought against the Estate.  By these claims for relief, the Government seeks to reduce the assessed liabilities of the Estate to judgment.  The current liability, as described in more detail below, is approximately $3 million.

3.      The third and fourth claims for relief are brought against the Estate's Temporary Administrator and Co-Executors.  In the third claim for relief, the United States seeks recovery of sums due pursuant to 31 U.S.C. § 3713(b), which subjects an estate's fiduciaries to liability for unpaid claims of the United States, including unpaid taxes, to the extent that those fiduciaries distributed the assets of the Estate to beneficiaries of the Estate or to creditors lacking priority ahead of the United States.  In the fourth claim for relief, the United States seeks disgorgement of any commissions or other funds received by the fiduciaries as a result of their breaches of duty in failing to pay priority taxes.

4.      In the fifth claim for relief, the Government seeks to recover the Estate's unpaid federal tax liabilities from distributees and beneficiaries of the Estate, pursuant to § 12-1.1 of the New York Estates, Powers and Trusts Law, to the extent of the distributions made by the Estate to those parties.

5.      In the sixth through ninth claims for relief, the Government seeks to set aside transfers of funds from the Estate without fair consideration or with the intent to hinder, delay, or defraud the United States as priority creditor of the Estate, and to recover the Estate's unpaid federal tax liabilities from those funds, pursuant to N.Y. Debtor & Creditor Law §§ 273 276, and 278.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1396 because a substantial part of the events or omissions giving rise to the claim occurred in this district and the liability for the taxes in question accrued in this district, and pursuant to 28 U.S.C. § 1391(a), because one or more defendants reside in this district.

8.      This action has been authorized and requested by a delegate of the Secretary of the Treasury pursuant to the provisions of 26 U.S.C. §§ 7401 and 7404, and is brought at the direction of the Attorney General of the United States pursuant to 26 U.S.C. § 7401.[1]

## PARTIES

9.      Plaintiff is the United States of America.

10.     Defendant Estate of Martin J. Machat (the "Estate") is a decedent's estate, proceedings as to which have occurred in the Surrogate's Court of the State of New York, County of New York ("New York Surrogate's Court"), under index number 1494/88, and the Court of Probate of the State of Connecticut, District of Greenwich ("Connecticut Probate Court"), under docket number 88-0125.  The Estate's last known address is c/o Eric Sklar, 2881 Mandalay Beach Road, Wantaugh, New York 11793.

---

[1] The United States has recently commenced a related action in the United States District Court for the Eastern District of New York to foreclose on liens on certain property of the Estate located in that district. *See United States v. Giacobbi, et al.*, No. 2:08-cv-03325-JFB (filed August 14, 2008).

11.     Defendant Harvey Corn ("Corn") is a natural person who served as Temporary Administrator of the Estate. Corn's last known address is c/o Greenfield, Stein & Senior, LLP, 600 Third Avenue, 11th Floor, New York, New York 10016.

12.     Defendant Avril Giacobbi ("Giacobbi") is a natural person who served as Co-Executor of the Estate and was also, on information and belief, a distributee and beneficiary thereof. Giacobbi's last known address is Flat 4, Goodwood Court, 54-57 Devonshire St., London W1W 5DZ, United Kingdom.

13.     Defendant Eric R. Sklar ("Sklar") is a natural person who served as Co-Executor of the Estate. Sklar's last known address is 2881 Mandalay Beach Road, Wantaugh, New York 11793.

14.     Defendant Roslyn Machat ("Roslyn Machat") is a natural person who, on information and belief, is a distributee and beneficiary of the Estate. Her last known address is 8620 Edwin Dr., Los Angeles, California 90046.

15.     Defendant Michael Machat ("Michael Machat") is a natural person who, on information and belief, is a distributee and beneficiary of the Estate. His last known address is 8620 Edwin Dr., Los Angeles, California 90046.

16.     Defendant Steven Machat ("Steven Machat") is a natural person who, on information and belief, is a distributee and beneficiary of the Estate. His last known address is 11514 Sunshine Terrace, Studio City, California 91604.

17.     Defendant Helene Machat Michael ("Michael") is a natural person who, on information and belief, is a distributee and beneficiary of the Estate. Her last known address is 3 Edgewood Gate, Plainview, New York 11803.

-4-

18.     Defendant Cheryl Machat Dorskind ("Dorskind") is a natural person who, on information and belief, is a distributee and beneficiary of the Estate. Her last known address is 47 Baycrest Avenue, Westhampton, New York 11977.[2]

19.     Defendant Alfred Fabricant ("Fabricant") is a natural person and attorney who represented Giacobbi in connection with the Estate, both in her capacity as a potential beneficiary and distributee of the Estate and in her capacity as Co-Executor of the Estate. Fabricant's last known address is c/o Dickstein Shapiro LLP, 1177 Avenue of the Americas, New York, NY 10036.

20.     Defendant Kayser & Redfern, LLP ("Kayser Firm") is a law firm that represented Roslyn Machat, Michael, and Michael Machat in connection with the Estate and represented all Machat Defendants in connection with a February 2002 agreement concerning the Estate, described below. The address of the Kayser Firm is 515 Madison Avenue, 30th Floor, New York, NY 10022.

THE ESTATE AND ITS REPRESENTATIVES

21.     On or about March 19, 1988, Martin J. Machat died.

22.     On or about July 8, 1988, Corn was appointed Temporary Administrator of the Estate by the New York Surrogate's Court. On information and belief, although Corn's responsibilities diminished after December 1995, he continued to control certain assets of the Estate until 2004.

---

[2] Defendants Roslyn Machat, Michael Machat, Steven Machat, Michael, and Dorskind are collectively referred to herein as the "Machat Defendants."

23.    On or about March 30, 1995, defendants Giacobbi and Sklar were appointed Co-Executors of the Estate by Connecticut Probate Court. On information and belief, Giacobbi and Sklar have never filed a petition for accounting in the Connecticut Probate Court proceeding.

24.    As Temporary Administrator and Co-Executors, Corn, Giacobbi, and Sklar owed a fiduciary duty to the Estate and to its creditors, including the United States.

25.    As Temporary Administrator and Co-Executors, Corn, Giacobbi, and Sklar had power over, and access to, the funds of the Estate, including the power to make distributions or payments out of the Estate and the power to prevent such payments and distributions.

26.    As Temporary Administrator and Co-Executors, Corn, Giacobbi, and Sklar had power over, and access to, the books and records of the Estate, including the power to verify that all debts of the Estate were paid according to their respective legal priorities.

27.    As Temporary Administrator and Co-Executors, Corn, Giacobbi, and Sklar had the ability to determine whether the Estate had paid all outstanding federal tax liabilities and the duty to ensure that any unpaid federal tax liabilities be accorded the priority in payment required by federal statute, 31 U.S.C. § 3713.

## FEDERAL ESTATE TAX
## LIABILITY OF THE ESTATE

28.    On or about June 23, 1989, defendant Corn filed an estate tax return with the IRS on behalf of the Estate, along with payment of the liabilities shown on the return. Corn reported a total gross estate of $3,673,972.00.

29.    On or about July 24, 1989, the IRS sent the Estate a notice of deficiency stating the IRS's intention to increase the Estate's estate tax.  The IRS sent a second notice on September 18, 1989.

30.    On or about June 11, 1990, Corn's counsel filed an affidavit in the New York Surrogate's Court stating that in light of the IRS's reexamination of the Estate's estate tax, "[I]n my opinion it is quite likely that the federal estate tax liability will increase substantially upon the completion of the pending audit.  In addition, there will be accrued interest on the unpaid amount."

31.    On or about October 7, 1996, the Estate exercised its statutory right to challenge in the United States Tax Court the IRS's determination that the Estate owed additional estate tax.

32.    On or about May 3, 1999, the Tax Court held, pursuant to a stipulation of the parties, that the IRS had properly determined that the Estate's estate tax should be increased by $323,724.00.

33.    On or about June 25, 1999, the IRS assessed the Estate an additional $323,724 in estate tax and $506,697.43 in interest on the unpaid tax.

34.    Also on or about June 25, 1999, the IRS again sent the Estate a notice concerning the unpaid balance of its estate tax.

35.    The IRS sent the Estate notices of its intent to levy on assets of the Estate with respect to the Estate's federal estate tax liability on January 29, 1990, November 19, 1998, September 14, 1999, November 5, 2001, and June 4, 2002. The June 4, 2002 notice of intent to levy was received by defendant Sklar, who signed a receipt that was returned to the IRS by the United States Postal Service.

36.    On July 25, 2002, the IRS attempted to levy against all known bank accounts of the Estate to recover the Estate's unpaid estate tax.  These accounts had principally been emptied of funds, leaving at most small residual balances.

37.    The Estate has made no payments to the IRS (except for certain small, involuntary payments obtained by the IRS through levies) with respect to the Estate's estate tax liability since the filing of its tax return in 1989.  The Estate has made no payments with respect to the liability assessed on June 25, 1999.

38.    As of August 28, 2008, the Estate's unpaid estate tax liability (including tax, interest and lien fees) is $1,631,264.94.

## 1989 INCOME TAX
## LIABILITY OF THE ESTATE

39.    On or about March 15, 1991, defendant Corn filed a fiduciary income tax return with the IRS reporting income of the Estate for the tax period ending December 31, 1989.

40.    On or about May 6, 1991, the IRS sent the Estate a notice of deficiency stating the IRS's intention to increase the Estate's 1989 income tax in connection with the 1989 fiduciary income tax return.

41.    The IRS sent the Estate notices of balance due concerning the Estate's 1989 federal income tax liability on or about May 6, 1991, and June 10, 1991.

42.    On or about September 8, 1992, the Estate exercised its statutory right to challenge tax in the United States Tax Court the IRS's determination to increase the Estate's 1989 federal income tax.

43.    On April 30, 1998, the Tax Court held that the IRS had properly increased the Estate's 1989 federal income tax by $277,309 for 1989 and applied a $69,327 late-filing penalty.

44.    As a result of the April 30, 1998 Tax Court decision, on September 11, 1998, the IRS assessed the Estate additional income tax for 1989 in the amount of $277,309, plus a late filing penalty of $69,327 and interest, as of the date of assessment, in the amount of $377,287.06.

45.    On or about September 11, 1998, the IRS sent the Estate another notice of balance due in connection with the 1989 federal income tax..

46.    The IRS sent the Estate notices of its intent to levy on assets of the Estate with respect to the Estate's 1989 income tax liability on or about November 19, 1998, and November 5, 2001.

47.    The Estate has made no payments to the IRS with respect to the Estate's 1989 federal income tax liability since the filing of its tax return in 1991.  The Estate has made no payments with respect to the federal income tax liability assessed on September 11, 1998.

48.    As of August 28, 2008, the Estate's unpaid tax liability for its 1989 federal income tax (including tax, interest, penalty and lien fees) is $1,332,491.04.

## OTHER COMMUNICATIONS
### BETWEEN IRS AND DEFENDANTS

49.    On October 6, 1999, Fabricant advised an IRS agent that he did not believe the Estate was solvent.

50.    In 2000 and 2001, Sklar had numerous conversations with an IRS agent concerning the Estate.  On October 11, 2000, Sklar advised the IRS agent that he did not believe there was any money in the Estate.

51.     On April 28, 2000, and January 9, 2001, IRS sent Corn additional letters indicating that it was trying to collect the Estate's taxes.

52.     On or about November 13, 2001, the IRS sent a proof of claim to Sklar and Fabricant in connection with the New York Surrogate's Court proceeding, stating that with accrued interest through February 4, 2002, the total liability was $2,022,433.11.  This proof of claim stated: "This debt has priority and must be paid in full in advance of distribution to creditors to the extent provided by law: See 31 U.S.C. Section 3713(a).  Any executor, administrator, or other person who fails to pay the claims of the United States in accordance with its priority may become personally liable for this debt under 31 U.S.C. 3713(b)."

53.     On May 28, 2002, the IRS sent a letter requesting a final accounting to Corn, Sklar, Giacobbi, and Fabricant.  Fabricant responded to the letter to indicate that a final accounting would be provided when available.

### DISTRIBUTIONS FROM THE ESTATE

54.     Corn, Giacobbi, and Sklar made or permitted distributions from the Estate to creditors and beneficiaries, including but not limited to certain payments contemplated by a February 2002 agreement (the "February 2002 agreement") among Corn, Giacobbi, and the Machat Defendants.

55.     The February 2002 agreement was made in settlement of certain objections to the petition for an accounting filed by Corn in the New York Surrogate's Court.

56.     By this February 2002 agreement, Corn, Giacobbi, and the Machat Defendants agreed to make several payments, including the following:

-10-

a.    "Kayser & Redfern, LLP, as attorneys," were to be paid $120,000.  On information and belief, these funds were to be paid to the Kayser Firm on behalf of and for the benefit of one or more of their clients, the Machat Defendants.

b.    "Kayser & Refern, LLP" were to be paid $140,000.  On information and belief, this sum of $140,000 was to be paid to the Kayser Firm as compensation for work performed by that firm on behalf of Roslyn Machat, Michael Machat, and Helen Machat Michael in connection with the accounting proceedings and/or work performed on behalf of all Machat Defendants in connection with the negotiations leading to the February 2002 agreement.

c.    "Fred Fabricant or his designee" were to be paid $165,535.  On information and belief, this payment was made as compensation to Fabricant for his work performed for Giacobbi both in her capacity as Co-Executor and in her individual capacity.

d.    "Avril Giacobbi, Co-Executor of the Estate of Martin Machat," in the amount of $425,000.  On information and belief, Giacobbi ultimately paid $400,000 of these funds to herself, as claimed reimbursement for funds advanced the Estate to pay for legal services.  However, Giacobbi has never filed an accounting in the Connecticut Probate Court documenting her handling of these funds.

57.    On information and belief, Sklar, as Co-Executor of the Estate, either knew or should have known of the February 2002 agreement, yet failed to prevent the February 2002 agreement from being entered into by Corn, Giacobbi, and the Machat Defendants.

-11-

58.    On information and belief, in 2004 payments were ultimately made from the assets of the Estate substantially as provided by the February 2002 agreement.

59.    On information and belief, the payments made under the February 2002 settlement were made in part from funds of an account of the Estate and in part from funds provided by Corn's insurance carrier. These insurance funds constituted an asset of the Estate, in that they were funds paid by Corn to resolve objections to his accounting for assets of the Estate.

60.    In addition to the payments pursuant to the February 2002 agreement, Corn made additional payments indicated in Schedules D and E to his accounting.

61.    Giacobbi and Sklar have not yet filed an accounting specifying any distributions from the Estate they may have made.

62.    Following Corn's accounting, the Estate also paid commissions to Corn in the amount of $59,585.82, and paid Corn's law firm fees for services in connection with Corn's administration of the Estate in the amount of $379,344.24.

### FIRST CLAIM FOR RELIEF
### AGAINST THE ESTATE
### TO REDUCE ESTATE TAX TO JUDGMENT

63.    The allegations in paragraphs 1 through 62 are repeated and realleged as though set forth fully herein.

64.    On June 25, 1999, the IRS properly assessed the Estate certain additional federal estate tax (including interest).

65.    As of August 28, 2008, these taxes remain unpaid in the amount (including tax, interest, and lien fees) of $1,631,264.94.

66.    Interest on the Estate's unpaid estate tax liability continues to accrue.

-12-

67.    Accordingly, the United States is entitled to an order reducing the Estate's unpaid estate tax liability to judgment.

### SECOND CLAIM FOR RELIEF
### AGAINST THE ESTATE
### TO REDUCE 1989 INCOME TAX TO JUDGMENT

68.    The allegations in paragraphs 1 through 67 are repeated and realleged as though set forth fully herein.

69.    On September 11, 1998, the IRS properly assessed the Estate certain additional income tax (including interest and penalty) for the 1989 tax year.

70.    As of August 28, 2008, the Estate's unpaid tax liability relating to this additional income tax for the 1989 tax year (including tax, interest and lien fees) is $1,332,491.04.

71.    Interest on the Estate's unpaid income tax liability for the 1989 tax year continues to accrue.

72.    Accordingly, the United States is entitled to an order reducing the Estate's unpaid income tax liability for the 1989 tax year to judgment.

### THIRD CLAIM FOR RELIEF
### AGAINST CORN, GIACOBBI, AND SKLAR
### PURSUANT TO 31 U.S.C. § 3713

73.    The allegations in paragraphs 1 through 72 are repeated and realleged as though set forth fully herein.

74.    "A representative of . . . an estate . . . paying any part of a debt of the . . . estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b).

-13-

75.    As Temporary Administrator and Co-Executors, Corn, Giacobbi, and Sklar each was a representative of the Estate, within the meaning of 31 U.S.C. § 3713(b).

76.    At all relevant times, Corn, Giacobbi, and Sklar each had knowledge of the Estate's unpaid tax liabilities or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the unpaid tax liabilities.

77.    Notwithstanding such knowledge or notice, Corn, Giacobbi, and Sklar made or permitted the payment of debts from the Estate to non-priority creditors and beneficiaries.  Such payments include, but are not limited to, the following:

    a.    The payment, made by Corn and Giacobbi pursuant to the February 2002 agreement, and permitted by Sklar, to "Kayser & Redfern, LLP, as attorneys," which on information and belief was paid to the Kayser Firm for further distribution to the Machat Defendants as beneficiaries of the Estate.

    b.    The payment, made by Corn and Giacobbi pursuant to the February 2002 agreement, and permitted by Sklar, "Kayser & Redfern, LLP" which on information and belief constituted a payment of the Kayser Firm's fees for work on behalf of the Machat Defendants and, thus, amounted to a distribution from the Estate for the benefit of the Machat Defendants as beneficiaries of the Estate.

    c.    The portion of the payment, made by Corn and Giacobbi pursuant to the February 2002 agreement, and permitted by Sklar, to "Fred Fabricant or his designee" that is allocable to work performed for Giacobbi in her individual capacity rather than as Co-Executor of the Estate, which amounts to a distribution from the Estate for the benefit of Giacobbi as beneficiary of the Estate.

-14-

d.      The payment by Giacobbi, permitted by Sklar, of $400,000 to herself as reimbursement for funds allegedly advanced, without an accounting being filed by Giacobbi and Sklar and approved by the Connecticut Probate Court.

e.      Certain payments indicated in Corn's accounting, including Schedule D and E thereto.

f.      Such additional payments to non-party creditors or beneficiaries as Giacobbi and Sklar may have made, which cannot presently be identified because of their failure to file an accounting in the Connecticut Probate Court.

78.     Corn, Giacobbi, and Sklar knew or should have known that the Estate was insolvent at the time of these payments or, in the alternative, that these payments would render the Estate insolvent.

79.     The Estate's federal tax liabilities remain unpaid.

80.     Accordingly, the United States is entitled to judgment that Corn, Giacobbi, and Sklar are each personally liable in the amount of payments from the Estate (excluding any payments to parties with priority claims senior to the Government) that they made or permitted, up to the amount of the Estate's unpaid federal tax liabilities.

FOURTH CLAIM FOR RELIEF
AGAINST CORN, GIACOBBI, and SKLAR
FOR DISGORGEMENT

81.     The allegations in paragraphs 1 through 80 are repeated and realleged as though set forth fully herein.

82.    As Temporary Administrator and Co-Executors of the Estate, Corn, Giacobbi, and Sklar were fiduciaries each owing a duty of loyalty, good faith, and care to the United States, as a creditor of the Estate.

83.    Corn, Giacobbi, and Sklar each breached his or her fiduciary duties to the United States by paying or permitting to be paid debts of lower priority (including but not limited to distributions to beneficiaries) instead of the Estate's outstanding federal tax liabilities, when Corn, Giacobbi, and Sklar each knew or should have known that the Estate was insolvent or would be rendered insolvent by such payments, and, accordingly, that the federal tax liabilities would not be paid in full.

84.    In light of these breaches of fiduciary duty, to the extent that Corn, Giacobbi, and Sklar have received commissions, fees or other payments in connection with or as a result of their position as the Estate's fiduciaries – including any payments received by Corn's law firm for its services supporting Corn as Temporary Administrator – they have been unjustly enriched in whole or in part.

85.    Accordingly, the United States is entitled to an order in equity requiring Corn, Giacobbi, and Sklar to disgorge fees, commissions, or other payments received in connection with or as a result of their position as the Estate's fiduciaries – including any payments received by Corn's law firm for its services supporting Corn as Temporary Administrator – to the extent that Corn, Giacobbi, and Sklar have been unjustly enriched, up to the amount of the Estate's unpaid federal tax liabilities.

FIFTH CLAIM FOR RELIEF
AGAINST GIACOBBI AND THE MACHAT DEFENDANTS
PURSUANT TO N.Y. E.P.T.L. § 12-1.1

86.     The allegations in paragraphs 1 through 85 are repeated and realleged as though set forth fully herein.

87.     Pursuant to N.Y. E.P.T.L. § 12-1.1, distributees and testamentary beneficiaries are liable, to the extent of the value of the funds or property they receive from an estate, for unpaid tax liabilities of the estate.

88.     To the extent that Giacobbi and the Machat Defendants received funds of the Estate, or had such funds applied to their benefit, they are distributees and testamentary beneficiaries of the Estate.

89.     Such funds would included, but are not limited to, the funds referred to in paragraphs 77(a)-(c) above, and may also include, but not be limited to, funds referred to in paragraphs 77(d)-(f).

90.     The Estate was insolvent at the time that distributions were made from the Estate to Giacobbi and the Machat Defendants or, in the alternative, those distributions rendered the Estate insolvent.

91.     The federal tax liabilities of the Estate remain unpaid.

92.     The United States cannot fully satisfy its claim because insufficient property of the Estate is in the hands of the Estate's personal representatives.

93.     Accordingly, the United States is entitled to judgment that Giacobbi and the Machat Defendants are each personally liable for the Estate's unpaid federal tax liabilities, up to the value of the funds they respectively received, or had applied to their benefit, from the Estate.

-17-

## SIXTH CLAIM FOR RELIEF
## AGAINST GIACOBBI AND THE MACHAT DEFENDANTS
## PURSUANT TO N.Y. D.C.L.§§ 273 & 278

94.    The allegations in paragraphs 1 through 93 are repeated and realleged as though set forth fully herein.

95.    The Estate made payments to or for the benefit of Giacobbi and the Machat Defendants, including but not limited to the payments described in paragraphs 77(a)-(c), above, and may also include, but not be limited to, the payments referred to in paragraphs 77(d)-(f).

96.    These payments made to or for the benefit of Giacobbi and the Machat Defendants were made without fair consideration.

97.    The Estate did not receive equivalent value for these payments.

98.    These payments were neither made nor received in good faith.

99.    The Estate and the recipients of these payments had actual or constructive knowledge that the making of these payments would reduce the funds available for payment of the Estate's federal tax liabilities, which the Estate lacked the ability to pay from other sources.

100.    When these payments were made the Estate was insolvent or, in the alternative, the making of these payments rendered the Estate insolvent.

101.    Accordingly, pursuant to N.Y. D.C.L. §§ 273 & 278, the United States is entitled to judgment (*i*) setting aside all payments from the Estate to or for the benefit of Giacobbi and the Machat Defendants without fair consideration, up to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and (*ii*) in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of

-18-

Giacobbi and the Machat Defendants, to the extent that they respectively received, or received the benefit of, payments from the Estate without fair consideration.

SEVENTH CLAIM FOR RELIEF
AGAINST GIACOBBI AND THE MACHAT DEFENDANTS
PURSUANT TO N.Y. D.C.L.§§ 276 & 278

102.    The allegations in paragraphs 1 through 101 are repeated and realleged as though set forth fully herein.

103.    The Estate made the payments to or for the benefit of Giacobbi and the Machat Defendants identified in paragraphs 77(a)-(c), and may also have made to them, or for their benefit, the payments referred to in paragraphs 77(d)-(f).

104.    These payments were made by the Estate with the actual intent to hinder, delay, or defraud the United States, as creditor, with respect to the federal tax liabilities.

105.    The Estate and the Estate representatives who made and permitted these payments had knowledge of the Estate's federal tax liabilities at the time that these payments were made.

106.    The Estate and the Estate's representatives who made and permitted these payments had knowledge that the Estate was insolvent or that, by the making of these payments, the Estate would be rendered insolvent.

107.    The Estate and the Estate's representatives who made and permitted these payments knew that as a result of these payments, these funds would be unavailable to pay the Estate's federal taxes, and that the Estate would be unable to pay its federal tax liabilities in full.

108.    These payments were not made in the ordinary operations of the Estate, but rather were unusual payments.

109.    The Estate did not receive consideration for these payments.

-19-

110.  Giacobbi had a close relationship to the Estate, in that she was not only a beneficiary but also a representative of the Estate.

111.  The Machat Defendants had a close relationship to the Estate, in that they were the wife and children of the decedent and beneficiaries of the Estate.

112.  Giacobbi and the Machat Defendants lacked good faith in receiving these payments.

113.  Giacobbi and the Machat Defendants had actual or constructive knowledge that the making of these payments would preclude the Estate from making full payment to the United States for the Estate's federal tax liabilities.

114.  Accordingly, pursuant to N.Y. D.C.L. §§ 276 & 278, the United States is entitled to judgment (*i*) setting aside the payments identified in paragraphs 77(a)-(c), and the payments identified in paragraphs 77(d)-(f), to the extent made to or for the benefit of Giacobbi or the Machat Defendants, to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and (*ii*) in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Giacobbi and the Machat Defendants, to the extent that they respectively received, or received the benefit of, the payments identified in paragraphs 77(a)-(f).

EIGHTH CLAIM FOR RELIEF
AGAINST FABRICANT AND THE KAYSER FIRM
PURSUANT TO N.Y. D.C.L.§§ 273 & 278

115.  The allegations in paragraphs 1 through 114 are repeated and realleged as though set forth fully herein.

-20-

116.    The Estate made the payments to Fabricant and the Kayser Firm referred to in paragraphs 77(a)-(c), above.

117.    These payments were made without fair consideration.

118.    The Estate did not receive equivalent value for these payments.

119.    These payments were neither made nor received in good faith.

120.    The Estate and the recipients of these payments had actual or constructive knowledge that the making of these payments would reduce the funds available for payment of the Estate's federal tax liabilities, which the Estate lacked the ability to pay from other sources.

121.    When these payments were made the Estate was insolvent or, in the alternative, the making of these payments rendered the Estate insolvent.

122.    Accordingly, pursuant to N.Y. D.C.L. §§ 273 & 278, the United States is entitled to judgment (*i*) setting aside the payments referred to in paragraphs 77(a)-(c), up to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and (*ii*) in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Fabricant and the Kayser Firm, to the extent that they respectively received, or received the benefit of, the payments from the Estate referred to in paragraphs 77(a)-(c) without fair consideration.

NINTH CLAIM FOR RELIEF
AGAINST FABRICANT AND THE KAYSER FIRM
PURSUANT TO N.Y. D.C.L.§§ 276 & 278

123.    The allegations in paragraphs 1 through 122 are repeated and realleged as though set forth fully herein.

124.    The Estate made the payments to Fabricant and the Kayser Firm referred to in paragraphs 77(a)-(c), above.

125.    These payments were made by the Estate with the actual intent to hinder, delay, or defraud the United States, as creditor, with respect to the federal tax liabilities.

126.    The Estate and the Estate representatives who made and permitted these payments had knowledge of the Estate's federal tax liabilities at the time that these payments were made.

127.    The Estate and the Estate's representatives who made and permitted these payments had knowledge that the Estate was insolvent or that, by the making of these payments, the Estate would be rendered insolvent.

128.    The Estate and the Estate's representatives who made and permitted these payments knew that as a result of these payments, the Estate would be unable to pay its federal tax liabilities in full.

129.    These payments were not made in the ordinary operations of the Estate, but rather were unusual payments.

130.    The Estate did not receive consideration for these payments.

131.    Fabricant had a close relationship to the Estate, in that he was the attorney for Avril Giacobbi, both in her individual capacity as a beneficiary of the Estate and also in her capacity as Co-Executor of the Estate.

132.    The Kayser Firm had a close relationship to the Estate, in that it was counsel for the Machat Defendants, who were the decedent's wife and children and beneficiaries of the Estate.

133.    Fabricant and the Kayser Firm lacked good faith in receiving these payments.

134.    Fabricant and the Kayser Firm had actual or constructive knowledge that the making of these payments would preclude the Estate from making full payment to the United States for the Estate's federal tax liabilities.

135.    Accordingly, pursuant to N.Y. D.C.L. §§ 276 & 278, the United States is entitled to judgment (*i*) setting aside the payments to Fabricant and the Kayser Firm referred to in paragraph 77(a)-(c), up to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and (*ii*) in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Fabricant and the Kayser Firm, in the amount of the payments referred to in paragraph 77(a)-(c), up to the amount of the Estate's unpaid federal tax liabilities.

WHEREFORE, plaintiff the United States of America demands judgment:

(a)    reducing to judgment the Estate's unpaid federal estate tax liability, including interest, lien fee and any other statutory additions thereto;

(b)    reducing to judgment the Estate's unpaid federal income tax liability for 1989, including penalties, interest, lien fee and any other statutory additions thereto;

(c)    declaring that Corn, Giacobbi, and Sklar are each personally liable in the amount of payments from the Estate (excluding any payments to parties with priority claims senior to the Government) that they made or permitted, up to the amount of the Estate's unpaid federal tax liabilities;

(d)    ordering Corn, Giacobbi, and Sklar to disgorge fees, commissions, or other payments received in connection with or as a result of their position as the Estate's fiduciaries –

-23-

including any payments received by Corn's law firm for its services supporting Corn as Temporary Administrator – to the extent that Corn, Giacobbi, and Sklar have been unjustly enriched, up to the amount of the Estate's unpaid federal tax liabilities;

(e)    declaring that Giacobbi and the Machat Defendants are each personally liable for the Estate's unpaid federal tax liabilities, up to the value of the funds they respectively received, or had applied to their benefit, from the Estate;

(f)    setting aside all payments from the Estate to or for the benefit of Giacobbi and the Machat Defendants without fair consideration, up to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Giacobbi and the Machat Defendants, to the extent that they respectively received, or received the benefit of, payments from the Estate without fair consideration, pursuant to N.Y. D.C.L. §§ 273 & 278.

(g)    setting aside the payments identified in paragraphs 77(a)-(c), and the payments identified in paragraphs 77(d)-(f), to the extent made to or for the benefit of Giacobbi or the Machat Defendants, to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Giacobbi and the Machat Defendants, to the extent that they respectively received, or received the benefit of, the payments identified in paragraphs 77(a)-(f), pursuant to N.Y. D.C.L. §§ 276 & 278, the United States is entitled to judgment.

-24-

(h)　　setting aside the payments referred to in paragraphs 77(a)-(c), up to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Fabricant and the Kayser Firm, to the extent that they respectively received, or received the benefit of, the payments from the Estate referred to in paragraphs 77(a)-(c) without fair consideration, pursuant to N.Y. D.C.L. §§ 273 & 278;

(i)　　setting aside the payments to Fabricant and the Kayser Firm referred to in paragraph 77(a)-(c), up to the amount of the Estate's unpaid federal tax liabilities, and ordering such funds to be paid to the United States on account of the Estate's federal tax liabilities; and in the alternative, declaring that the United States is entitled to collect the unpaid federal tax liabilities of the Estate directly from the funds of Fabricant and the Kayser Firm, in the amount of the payments referred to in paragraph 77(a)-(c), up to the amount of the Estate's unpaid federal tax liabilities, pursuant to N.Y. D.C.L. §§ 276 & 278.

(j)    granting plaintiff its costs, disbursements, and such further relief against

defendants as the Court may deem just and proper.

Dated:        New York, New York
              September 11, 2008

                           MICHAEL J. GARCIA
                           United States Attorney for the
                           Southern District of New York
                           *Attorney for Plaintiff*
                           *United States of America*

              By:          _____
                           ROBERT WILLIAM YALEN
                           Assistant United States Attorney
                           86 Chambers Street, 3rd Floor
                           New York, New York 10007
                           Telephone: (212) 637-2722
                           Facsimile:  (212) 637-2687
                           robert.yalen@usdoj.gov

-26-