**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**          08 Civ. 7936 (JGK)

          **- against -**                   MEMORANDUM OPINION AND
                                            ORDER
**ESTATE OF MARTIN J. MACHAT, ET AL.,**

                    **Defendants.**

─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

       This is an action by the Government to recover taxes
allegedly not paid by the estate of Martin Machat.  The
Government seeks to collect the allegedly unpaid taxes from the
fiduciaries, beneficiaries, and transferees of the estate.  The
Government brought this motion for alternative service,
requesting that this Court declare valid nunc pro tunc service
of process upon (1) defendant Avril Giacobbi ("Giacobbi")
individually and on behalf of defendant Estate of Martin J.
Machat ("the Estate"), and (2) defendant Steven Machat
("Machat").  Giacobbi served as co-executor and was a
beneficiary of the Estate.  (Am. Compl. ¶ 12.)  Machat was a
beneficiary of the Estate.  (Am. Compl. ¶ 16.)  The Government
also asks this Court in the alternative, to authorize service of
process by alternative means.  Giacobbi opposes the motion and
moves to dismiss for lack of personal jurisdiction and for lack
of proper service.  Machat has not responded to the motion.

I.

Unless otherwise stated, the following facts are accepted as true for the purpose of these motions.

Harvey Corn ("Corn") was appointed Temporary Administrator of the Estate on July 8, 1988 by the New York State Surrogate's Court and probate proceedings in Connecticut were stayed in favor of the New York proceedings.  (Def.'s Reply Ex. B; Am. Compl. ¶ 23.)  On March 30, 1995 Giacobbi and Eric Sklar were appointed Co-Executors of the Estate by the Connecticut Probate Court.  (Am. Compl. ¶ 24.)  Giacobbi, a citizen of Ireland, has no residence in the United States.  (Decl. of Avril Giacobbi ¶ 2, May 29, 2009 ("Giacobbi Decl.").)

On or before April 18, 1995, Giacobbi met with Corn to discuss the Estate's affairs.  (Decl. of Natalie Kuehler Ex. 6, July 2, 2009 ("Kuehler July 2 Decl.").)  Giacobbi made arrangements to retrieve Estate files from Corn's office in New York on May 31, 1995.  (Kuehler July 2 Decl. Ex. 7.)

An agreement was made in February 2002 to settle objections to the petition for an accounting filed by Corn in the New York State Surrogate's Court.  (Decl. of Natalie Kuehler Ex. B, Decree Settling Final Accounting, June 12, 2009, ("Kuehler June

12 Decl."); Am. Compl. ¶ 56.)[1]  The objections included those filed in New York State Surrogate's Court by Giacobbi as Co-Executor and named distributee.  (Kuehler July 2 Decl. Ex. 8.) Giacobbi consented to the entry of the settlement decree in New York State Surrogate's Court.  (Kuehler June 12 Decl. Ex. B, Decree Settling Final Accounting at ¶ 4.)  The settlement contained an agreement to make several payments from the Estate, including $425,000 paid to Giacobbi by check from funds held in New York.  (Kuehler June 12 Decl. Ex. A; Kuehler July 2 Decl. Exs. 10-14; Am. Compl. ¶ 57.d.)  Giacobbi paid $400,000 of these funds to herself as reimbursement for funds advanced to the Estate to pay legal costs.  (Kuehler June 12 Decl. Ex. C; Kuehler July 2 Decl. Ex. 24; Am. Compl. ¶ 57.d.)  Giacobbi never filed an accouting in the Connecticut Probate Court of her handling of the funds.  (Am. Compl. ¶ 57.d.)

As of August 28, 2008 the Estate owed $1,631,264.94 in unpaid estate tax liability and $1,332,491.04 in unpaid 1989 federal income tax, including interest, penalties, and lien fees.  (Am. Compl. ¶¶ 39, 49.)  The relevant tax returns were filed while Corn was the Estate Executor.  (Kuehler July 2 Decl. Exs. 2-3.)  The Government now seeks to collect the unpaid taxes

---

[1] The history of the litigation regarding the Estate is bitter and complex, and many of the details are not relevant here.  For an example of the objections to Corn's handling of the Estate, see Kuehler Decl. Ex. 8, July 2, 2009.

from the fiduciaries, beneficiaries, and transferees of the estate.

The Government filed the initial complaint in the present case on September 11, 2008.  Since that time, the Government has dutifully, but unsuccessfully, attempted to serve process on both Giacobbi and Machat.

Pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("the Hague Convention"), the Government attempted to serve Giacobbi in London, England, her last known address.  See also Fed. R. Civ. P. 4(f)(1) (authorizing "any internationally agreed means of service that is reasonably calculated to give notice", such as those authorized by the Hague Convention).  The Government's service request was accepted by British authorities, who made several attempts to serve Giacobbi.  (Decl. of Tara La Morte Ex. 1, Apr. 21, 2009 ("La Morte Apr. 21 Decl.").)  These attempts were not successful because British authorities were unable to ascertain whether Giacobbi continued to reside at her last known address. (La Morte Apr. 21 Decl. Ex. 1.)  A search of public documents revealed a possible address for Giacobbi in France, and the Government also unsuccessfully attempted to serve her there pursuant to the Hague Convention.  (Kuehler July 2 Decl. Ex. 1.)

The Government learned that attorney Richard Kestenbaum had been in touch with Giacobbi regarding assets of the Estate, although Giacobbi prohibited Kestenbaum from revealing her location and he was not authorized to accept service of process on her behalf.  (La Morte Apr. 21 Decl. Ex. 3.)  As a result of a Government subpoena, Kestenbaum did arrange email contact with Giacobbi and she indicated her unwillingness to share her contact information publicly.  (La Morte Apr. 21 Decl. Ex. 3; Decl. of Tara La Morte Ex. A, Apr. 14, 2009 ("La Morte Apr. 14 Decl.").)  While several emails were exchanged between the Government and Giacobbi by using this address, Giacobbi represents that the email address was lent to her by a friend. (La Morte Apr. 14 Decl., Apr. 14, 2009; Giacobbi Decl. ¶¶ 5-6.) On March 5, 2009 the Government sent Giacobbi the complaint and other papers by email and asked that she waive formal service of process.  (La Morte Apr. 14 Decl. Ex. B.)  In response, Giacobbi initially indicated that she would sign the waiver of process and return it as instructed, but subsequently asked for clarification.  (La Morte Apr. 14 Decl. Exs. D-E.)  Attorney John Shaban, representing Giacobbi, later notified the Government that Giacobbi would no longer sign the waiver of service of process.  Shaban advised the Government that he was not authorized to accept service of process for Giacobbi, and

that Giacobbi does not reside in the United States.  (Pl.'s Mem. in Supp. of Mot. for Alternative Service 3.)

The Government additionally served the Judge of the Court of Probate District of Greenwich, Connecticut, who Giacobbi, as a non-resident executor of the Estate, had appointed as her agent for service of process for matters concerning her duties as Estate fiduciary.  (La Morte Apr. 21 Decl. Ex. 5; Certificate of Service, Docket No. 42.)

In the case of Machat, the Government unsuccessfully sent professional process servers to seven New York and California addresses that were believed to be Machat's potential addresses. (La Morte Apr. 21 Decl. Ex. 6.)  Family members have identified London, England as Machat's current location.  (La Morte Apr. 21 Decl. Exs. 7-8.)  Three family members independently provided the Government with the same email address for Machat, and two of them have successfully communicated with Machat at that address.  (La Morte Apr. 21 Decl. Exs. 8-9.)  The Government emailed the service of process documents to this address on January 8, 2008, but has not received a reply from Machat. (Decl. of Robert Yalen ¶ 3, Apr. 21, 2009 ("Yalen Decl.").)  A search of the email address on www.facebook.com resulted in only one match, a profile for "Steven Machat".  (La Morte Apr. 21 Decl. ¶ 4.)

## II.

Both Giacobbi and Machat are believed to reside outside of the United States. Federal Rule of Civil Procedure 4(f)(1) permits service of process on an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents". Fed. R. Civ. P. 4(f)(1).  In this case, the Government unsuccessfully attempted to serve Giacobbi pursuant to the Hague Convention.  While the Government believes that Machat is located in London, England, no current address is known and therefore Machat cannot be served under the Hague Convention procedures.

Under Rule 4(f)(3), an individual may be served at a place not within any judicial district of the United States "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "'Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" Ehrenfeld v. Mahfouz, No. 04 Civ. 9641, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005) (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002).  "The only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must

7

not be prohibited by international agreement." Id. (internal citation omitted).  The Constitution itself does not prohibit any particular means of service under Rule 4(f) so long as the service is reasonably calculated to provide interested parties notice of the action and the opportunity to be heard.  See Philip Morris USA Inc. v. Veles Ltd., No. 06 Civ. 2988, 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007) (collecting cases); see also KPN B.V. v. Corcyra D.O.O., No. 08 Civ. 1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009); Levin v. Ruby Trading Corp., 248 F. Supp. 537, 540-41 (S.D.N.Y. 1965) (Weinfeld, J.) (due process inquiry for alternative service domestically).

In this case, the Government requests that this Court declare valid nunc pro tunc service of process on Giacobbi, the Estate, and Machat or, in the alternative, order service of process through an alternative means.  Declaring prior service effective nunc pro tunc is not appropriate because Rule 4(f)(3) requires that the means of service be ordered by the Court and the Government's prior ineffectual efforts were not done pursuant to Court order.

However, the Court will approve alternative service of process reasonably calculated to give notice and provide an opportunity to respond.  In light of the Government's diligent efforts to serve Giacobbi and her efforts to resist service, service on Giacobbi (and through her, the Estate) by email and

by service on her attorney Mr. Shaban will be authorized. The
Government has successfully corresponded with Giacobbi by the
email address that she provided.  See S.E.C. v. Lines, No. 07
Civ. 11387, 2009 WL 2431976, at *1-2 (S.D.N.Y. Aug. 7, 2009)
(permitting service of process on foreign defendant by known
email address and certified mail); Philip Morris, 2007 WL
725412, at *2 (explaining authorization of service on defendant
abroad by email).  In fact, Giacobbi received and acknowledged
actual notice of this suit from the Government through that
email address.  Regardless of whether the email address belongs
to Giacobbi, it is known that she has received emails through
that address in the past.

    Furthermore, Mr. Shaban is in a position to provide
Giacobbi with a copy of the service papers.  He has appeared for
Giacobbi in this matter, and therefore must know how to contact
her to notify her of service.  See KPN B.V., 2009 WL 690119, at
*2 (permitting service of process on attorney who had made
appearances on behalf of defendant).  Given that he is already
representing Giacobbi, Mr. Shaban is not likely to disregard
receipt of service of process.  See id.  Both of these methods
are reasonably calculated to give Giacobbi notice and an
opportunity to respond.

    With respect to Machat, service by email and publication in
The Daily Telegraph is appropriate.  The Government is in

possession of an email address provided independently by several of Machat's family members.  While the Government has not received a response from correspondence sent to Machat at that address, two family members have successfully communicated with Machat at that address. It is reasonable to expect that Machat will receive correspondence at that address, and therefore email service to that address is reasonably calculated to provide notice and an opportunity for Machat to respond.  See Lines, 2009 WL 2431976, at *1-2.

Furthermore, service by publication is an appropriate additional means of serving Machat.  Family members report that Machat is currently living in London, England.  The Daily Telegraph is a daily paper in wide circulation throughout the United Kingdom.  Service by publication in The Daily Telegraph one time a week for four successive weeks beginning twenty days after the date of this Order is reasonably calculated to provide Machat with notice and an opportunity to respond.  See S.E.C. v. Shehyn, No. 04 Civ. 2003, 2008 WL 6150322, at *4 (S.D.N.Y. Nov. 26, 2008) (allowing service of process on foreign defendant by publication).

The Government's motion to declare valid nunc pro tunc service of process is denied.  The Government's motion to allow alternative service of process on Giacobbi, the Estate, and Machat is granted as explained above and the time to complete

service is extended until **November 13, 2005**.  Giacobbi's motion to dismiss on the grounds of insufficient service of process is denied.

### III.

### A.

Giacobbi moves to dismiss all claims against her pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

A district court has "broad discretion" in deciding a motion to dismiss pursuant to Rule 12(b)(2), including the discretion to conduct an evidentiary hearing if the Court believes one is warranted.  See CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986); see also Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 515 (S.D.N.Y. 2001).  To survive a motion to dismiss where no evidentiary hearing is held, the plaintiff need only make a prima facie case that the defendant is subject to the Court's personal jurisdiction.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Rubinbaum LLP v. Related Corporate Partners V, L.P., 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001).  However, the

Court may rely on matters outside the pleadings, and "where [the] defendant rebuts [the] plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and the plaintiffs do not counter that evidence—the allegation may be deemed refuted." GCG Int'l, Inc. v. Eberhardt, 05 Civ. 2422, 2005 WL 2647942, at *2 (S.D.N.Y. Oct. 17, 2005) (internal quotation marks omitted); see also Bensusan Rest. Corp. v. King, 937 F.Supp. 295, 298 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).  The Court must construe the pleadings and supporting affidavits in the light most favorable to the plaintiff.  See CutCo Indus., 806 F.2d at 365; Bensusan, 937 F.Supp. at 298; see also M. Shanken Commc'ns, Inc. v. Cigar500.com, 07 Civ. 7371, 2008 WL 2696168, at *3 (S.D.N.Y. July 7, 2008); Berwick v. New World Network Int'l, 06 Civ. 2641, 2007 WL 949767, at *9 (S.D.N.Y. Mar. 28, 2007).

In a federal question case involving an out-of-state defendant, the Court applies the forum state's personal jurisdiction rules when the federal statute does not provide for nationwide service of process.  See PDK Labs, 103 F.3d at 1108. The Court must therefore determine whether New York law allows the exercise of personal jurisdiction and, if so, whether doing so comports with constitutional due process guarantees.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945);

12

Clarendon, 152 F. Supp. 2d at 515; see also M. Shanken Commc'ns, 2008 WL 2696168, at *3; Landau v. New Horizon, 02 Civ. 6802, 2003 WL 22097989, at *3 (S.D.N.Y. Sept. 8, 2003).

In this case, the Government argues that the Court has specific jurisdiction over Giacobbi under New York Civil Practice Law & Rules ("CPLR") §§ 302(a)(1)-(2).

**B.**

The Government first argues that jurisdiction is proper under CPLR § 302(a)(1) because Giacobbi transacted business in New York.  CPLR § 302(a)(1) authorizes jurisdiction where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state."  C.P.L.R. § 302(a)(1).  Under New York law, for §302(a)(1) to apply, the cause of action must "arise out of" a defendant's activities in New York.  See, e.g., CutCo Indus., Inc., 806 F.2d at 365.

Transacting business "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." Broad Horizons, Inc. v. Central Crude Ltd., No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (citation omitted); see also Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp. 1251, 1259 (S.D.N.Y. 1995), aff'd, 201 F.3d 431 (2d Cir. 1999); Cavalier Label Co., Inc. v. Polytam, Ltd., 687 F.Supp. 872, 876 (S.D.N.Y. 1988).  Courts in New York

focus on "whether the defendant's conduct constitutes purposeful [ ] avail[ment] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 247 (2d Cir. 2007) (internal quotation marks omitted) (citations omitted); accord Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000); see also CutCo Indus., Inc., 806 F.2d at 365; Ainbinder v. Potter, 282 F. Supp. 2d at 516 (S.D.N.Y. 2001). The courts consider a range of "purposeful activity," and even a single transaction of business is sufficient to give rise to personal jurisdiction under CPLR § 302(a)(1), if the claim arises out of that transaction. See Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (collecting cases); see also M. Shanken Commc'ns, 2008 WL 2696168, at *3-4; Obabueki v. I.B.M. Corp., Nos. 99 Civ. 11262, 99 Civ. 12486, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001) (internal citations omitted).

In this case, the Government has made a sufficient prima facie case of personal jurisdiction over Giacobbi in New York. A single "transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)] even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." PDK Labs, 103 F.3d at

14

1109 (alterations in original) (quoting <u>Kreutter v. McFadden Oil Corp.</u>, 522 N.E.2d 40, 43 (N.Y. 1988).  Section 302(a)(1) also requires the Government show a "substantial relationship" or some "articulable nexus between the business transacted and the cause of action." <u>McGowan v. Smith</u>, 419 N.E.2d 321, 323 (N.Y. 1981).  An agent's actions in New York can be sufficient for personal jurisdiction.  <u>Cf.</u> <u>Cutco Indus., Inc.</u>, 806 F.2d at 366 (agent for jurisdictional purposes must have acted in state for benefit of and with knowledge and consent of principal).  Here, Giacobbi's purposeful activities, and the activities of her lawyer, in New York are substantially related to the claims asserted by the Government. Giacobbi met with Corn in New York and retrieved Estate files from him in New York.  Giacobbi, both personally and through her lawyer, actively litigated against Corn in New York State Surrogate's Court by objecting to Corn's accounting of the Estate. The central object of this litigation was the Estate, which is the source of the unpaid tax liability alleged by the Government.

Negotiating a settlement agreement in New York is a sufficient basis for long-arm jurisdiction under CPLR § 302(a)(1).  <u>See</u> <u>Ainbinder</u>, 282 F. Supp. 2d at 186.  Giacobbi, through her lawyer in New York, was active in the litigation resulting in a settlement agreement with Corn.  Giacobbi consented to the entry of the settlement decree in New York

Surrogate's Court and ultimately received $400,000 from that settlement, paid from funds held in New York.  The settlement with Corn related to Corn's handling of the Estate.  The Government here seeks a share of the Estate funds.

The conduct of litigation and the existence of a settlement agreement are sufficient to constitute transacting business in New York for the purposes of lawsuits relating to the litigation or settlement.  Here, the Government contends that it is entitled to a share of the proceeds of the Estate, and that claim is related to Giacobbi's transaction of business in New York.

For the foregoing reasons, CPLR § 302(a)(1) is an appropriate basis for long-arm jurisdiction in New York over Giacobbi.  Therefore, it is unnecessary to reach the question of whether there is long-arm jurisdiction over Giacobbi pursuant to CPLR § 302(a)(2) which relates to jurisdiction where the defendant commits a tortuous act in the state.

### C.

Jurisdiction over the defendants must also comport with the constitutional requirement of due process.  There are two parts to the due process test for personal jurisdiction:  the "minimum contacts" inquiry and the "reasonableness" inquiry.  <u>Metro. Life</u>

Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

The minimum contacts inquiry requires that the Court determine whether a defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction over the defendant. See Int'l Shoe, 326 U.S. at 316; Metro. Life, 84 F.3d at 567. In determining whether minimum contacts exist, courts must examine the "quality and nature" of the contacts under a totality of the circumstances test, to determine whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . such that [the defendant] should reasonably anticipate being haled into court there." Best Van Lines, Inc., 490 F.3d at 242-43 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985)) (internal citations omitted). The court should consider the relationship among the defendant, the forum, and the litigation. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984); Shaffer v. Heitner, 433 U.S. 186, 204 (1977); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998).

The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with "traditional notions of fair play and

substantial justice" under the circumstances of the particular case.  Calder v. Jones, 465 U.S. 783, 788 (1984) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The Court must take into account five factors in this inquiry:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113-14 (1987); see also Burger King Corp., 471 U.S. at 476-77; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Metro. Life, 84 F.3d at 568; M. Shanken Commc'ns, 2008 WL 2696168, at *8; Lechner v. Marco-Domo Internationales Interieur GMBH, 03 Civ. 5664, 2005 WL 612814, at *3 (S.D.N.Y. Mar. 14, 2005).

The exercise of jurisdiction over Giacobbi would not violate the constitutional guarantee of due process because it satisfies the minimum contacts requirement and comports with "traditional notions of fair play and substantial justice." Calder, 465 U.S. at 788 (quoting Milliken, 311 U.S. at 463). The Court of Appeals for the Second Circuit has held that satisfaction of CPLR § 302(a) requirements fulfills the

constitutional requirements for personal jurisdiction.  See D.H. Blair & Co., Inc. v. Gottdiener, et al., 263 F.3d 95, 105 (2d Cir. 2006) (citation omitted); see also Donini Int'l, S.P.A. v. Satec (U.S.A.) LLC, No. 03 Civ. 9471, 2004 WL 1574645, at *5 (S.D.N.Y. July 13, 2004) ("transacts business" test under CPLR § 302(a)(1) is "in essence, the same as that established by the United States Supreme Court to evaluate the constitutionality of personal jurisdiction under long-arm statutes.").

Here, Giacobbi actively litigated matters pertaining to the Estate in New York and should expect that further litigation over the proceeds of that activity could occur in New York. Giacobbi's argument that she was "forced" to litigate in New York is unavailing.  Giacobbi was not the defendant in the litigation regarding the Estate.  Giacobbi objected to Corn's New York accounting and consented to a settlement in New York in order to obtain proceeds from the Estate.  It is not a violation of due process to require her to defend against a claim involving proceeds she received from her efforts in New York.

The exercise of jurisdiction over Giacobbi is also reasonable.  Giacobbi objects to litigation in New York when she resides in London, England.  However, Giacobbi has shown herself quite capable of engaging in litigation in New York.  When a settlement agreement in New York was to her benefit, Giacobbi readily participated.  The burden on Giacobbi is outweighed in

this case when most of the other defendants reside in New York and New York courts have already litigated various related motions.

The Court notes that the Government is only required to make a prima facie showing of personal jurisdiction at this stage.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 206 (citations omitted).  Where, as here, the facts of the case itself are so intertwined with the jurisdictional issue, the Court is well within its discretion to deny the motion to dismiss for lack of personal jurisdiction.  However, if the ultimate facts do not bear out jurisdiction by a preponderance of the evidence, the case will later be dismissed for lack of personal jurisdiction as well as on the merits.  Cf. First Wall St. Capital Corp. v. Int'l Prop. Corp., Ltd., No. 97 Civ. 0702, 1998 WL 338105, at *4 n. 2 (S.D.N.Y. June 24, 1998) (when question of jurisdiction and merits are intertwined, plaintiff need not show personal jurisdiction by preponderance of evidence prior to trial) (citation omitted).

Therefore, Giacobbi's motion to dismiss for lack of personal jurisdiction is denied.


                              **CONCLUSION**

For the reasons explained above, the Government's motion to declare valid nunc pro tunc service of process is **denied**.  The

Government's motion to allow alternative service of process on Giacobbi, the Estate, and Machat is **granted**. The Government is directed to complete service of process by **November 13, 2009**. Giacobbi's motion to dismiss for lack of personal jurisdiction and lack of proper service is **denied**.

The Clerk is directed to close Docket Nos. 55 and 72.

SO ORDERED.

Dated:    New York, New York
          September 21, 2009

John G. Koeltl
United States District Judge

21